1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LESLIE MERNA and BRADLEY MERNA,
husband and wife, and MERNA
PROPERTIES, INC., a Washington
Corporation,

              Plaintiffs,

    v.

COTTMAN TRANSMISSION SYSTEMS,
LLC, a Delaware Limited Liability Company,

              Defendant.

Case No.  C05-5446 RJB

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT; ORDER TO SHOW
CAUSE; AND ORDER DENYING
DEFENDANT'S MOTION FOR
STAY OF PROCEEDINGS

18

19

20

21

     This matter comes before the Court on Plaintiffs' Motion for Summary Judgment or Injunctive Relief (Dkt. 10), and Defendant's Cross Motion for Stay of Proceedings (Dkt. 25). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

22

<u>PROCEDURAL AND FACTUAL HISTORY</u>

23

24

25

     Plaintiffs' complaint indicates that this dispute between Plaintiff franchisees and Defendant franchisor arose over the terms of two license agreements for two auto transmission repair centers located in Tacoma and Poulsbo, Washington.  Dkt. 1, at 5.  On May 19, 1999,

26

ORDER
Page - 1

Plaintiffs entered into a license agreement with Defendant to own and operate Cottman

Transmission Center in Tacoma, and on May 13, 2004, Plaintiffs entered into a second license

agreement with Defendant to own and operate Cottman Transmission Center in Poulsbo.  *Id.*

On April 29, 2004, Plaintiffs also entered into a lease agreement with Total Lease Concepts,

LLC for mechanical equipment that was purchased from Defendant, leased to Plaintiffs, and

subsequently used by Plaintiffs at the Poulsbo location.  *Id.*  Thereafter, Total Lease Concepts

assigned its interest in the lease agreement to Frontier Leasing Corporation ("Frontier Leasing").

Dkt. 10, at 2.

Plaintiffs contend that they operated the Poulsbo business until the early part of 2005, at

which time Defendant removed them for failure to comply with the terms of the licensing

agreement.  *Id.*  Plaintiffs contend that Defendant inappropriately retained possession of the

mechanical equipment that Plaintiffs were leasing from Frontier Leasing.  *Id.*  The equipment

remains at the Poulsbo business, and is currently being used by Defendant.  *Id.*  Plaintiffs further

contend that Defendant refused, and still refuses, to return the equipment to Plaintiffs, despite

demands from both Plaintiffs and Frontier Leasing.  *Id.*

Plaintiffs also contend that the services to be provided to them under the license

agreements include (1) assisting Plaintiffs with obtaining a location and negotiating a lease, (2)

assisting Plaintiffs with the layout of the businesses and the installation of equipment, (3)

assisting Plaintiffs with finding and training personnel, (4) providing Plaintiffs with advice and

consultation, and (5) providing training programs and meetings for Plaintiffs.  Dkt. 1, at 6.

Plaintiffs contend that Defendant also agreed to provide advertising for Plaintiffs' Tacoma and

Poulsbo locations, in exchange for monthly payments from Plaintiffs.  *Id.*  Plaintiffs contend that

this advertising was critical to their business, because it generated new customers for each

location and allowed them to meet their ongoing financial obligations to Defendant.  *Id.*

Plaintiffs allege that Defendant failed, among other things, to provide the advertising,

operational support, and updated training classes promised to Plaintiffs under the license

ORDER
Page - 2

agreements. *Id.* Plaintiffs further allege that Defendant's failure to provide these services resulted in Plaintiffs' inability to continue operating the Tacoma and Poulsbo locations, and Defendant's ultimate repossession of the Poulsbo location. *Id.* at 7.

On June 3, 2005, Plaintiffs filed this action for damages and injunctive relief in the Washington Superior Court for Kitsap County, alleging (1) breach of licensing agreements, (2) misrepresentation, (3) violation of the Franchise Investment Protection Act, RCW 19.100.030 *et seq.*, (4) violation of the Consumer Protection Act, RCW 19.86 *et seq.*, and (5) replevin. *Id*. at 8. On July 5, 2005, this action was removed to federal court. Dkt. 1.

<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

On August 30, 2005, Plaintiffs filed a Motion for Summary Judgment or Injunctive Relief, requesting that the Court issue (1) a declaratory judgment that the license agreements do not grant an option or assignment of the mechanical equipment to Defendant, and (2) an injunction ordering Defendant to return the equipment to Plaintiffs. Dkt. 10, at 11. In the alternative, Plaintiffs request that the Court (1) enjoin Defendant from removing or selling the equipment at the Poulsbo location until the outcome of this action, and (2) require Defendant to post a bond. *Id.*

Plaintiffs contend that Defendant has wrongfully retained possession of the leased equipment, and that Defendant's only claim to the equipment is through a misplaced interpretation of the license agreement. *Id.* at 4. Plaintiffs contend that Defendant is relying on Section 20(b) of the Poulsbo license agreement, which states in part:

> COTTMAN shall have the option to purchase all of OPERATOR's right, title and interest in the CENTER and all equipment contained herein. If COTTMAN intends to exercise its option, COTTMAN shall notify OPERATOR of such intention at the time of termination or in the case of expiration, within ten (10) days prior to the expiration of the current term of this Agreement. The full purchase price of the CENTER shall be ... the lesser of the fair market value of the equipment and parts then located at the CENTER or OPERATOR's cost, less depreciation on the equipment computed on a ten (10) year straight line basis, less all outstanding liabilities of the CENTER. COTTMAN shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the CENTER and to pay such debts and liabilities from such funds. In no event, however, shall COTTMAN become liable for any of the debts and

liabilities of the CENTER which remain unsatisfied subsequent to the distribution by COTTMAN of the purchase price funds ...

*Id.* at 5.  Plaintiffs argue that Defendant may not retain or purchase the equipment in question under the licence agreement because the equipment belongs to Frontier Leasing.  *Id.*  Plaintiffs argue that the license agreement would only apply if Plaintiffs owned the equipment, and could therefore rightfully sell the equipment to Defendant.  *Id.*  In addition, Plaintiffs state that they are making lease payments on the equipment in the amount of $1,905 each month, without receiving the revenue generated from the equipment, while Defendant's use of the equipment is devaluing it.  *Id.* at 10.  According to the list of equipment, several items appear to be fixed to the property, including a 9,000 pound lift and 12,000 pound lift.  Dkt. 12-4, at 1.

Plaintiffs further argue that, under their lease agreement with Frontier Leasing, the following provisions apply to the equipment:

TITLE: QUIET ENJOYMENT.  Title to the Equipment shall at all times be vested in Lessor. ... Lessee shall, at its expense, protect and defend Lessor's title against all persons claiming against or through Lessee, keep the Equipment free from legal process or encumbrance, give the Lessor immediate notices thereof and shall indemnify Lessor from any loss caused thereby.  So long as Lessee is not in default under the Lease, Lessee shall quietly use and enjoy the Equipment, subject to the terms of the Lease. ...

ASSIGNMENT: WAIVER OF DEFENSES. ... Lessee shall not assign the lease or any interest in the lease or in the equipment nor enter into any sublease with respect to any of the equipment without Lessor's prior written consent.  Any purported assignment or sublease by Lessee without the prior written consent of Lessor shall be void.

Dkt. 12-2, at 1.  Plaintiffs argue that the terms of their lease agreement with Frontier Leasing prevent them from selling or assigning the equipment to Defendant, and further support a finding that Defendant does not have a right to possess or purchase the equipment.  Dkt. 10, at 6.  Plaintiffs contend that it is well established in Washington that when a contract prohibits assignment in specific and unmistakable terms the assignment will be void, citing *Levison v. C.R. Linderman*, Wn.2d 855 (1958).  *Id.*  Plaintiffs further contend that Defendant knew about Plaintiffs' lease agreement with Frontier Leasing, executed on April 29, 2004, prior to entering into the license agreement for the Poulsbo location, executed on May 13, 2004.  *Id.* at 8.

ORDER
Page - 4

1

DEFENDANT'S RESPONSE AND
CROSS MOTION FOR STAY OF PROCEEDINGS

2

3        In its Response, Defendant contends that (1) Defendant lawfully took possession of the

Poulsbo location and the equipment located therein, (2) Plaintiffs agreed in the Tacoma and

4

Poulsbo licence agreements to the jurisdiction and venue of a court of general jurisdiction in

5

Montgomery County, Pennsylvania, (3) the parties to this action are already involved in

6

litigating substantially similar claims in the Court of Common Pleas, Montgomery County,

7

Pennsylvania, and (4) the Pennsylvania court has already issued an injunction ordering that the

8

equipment in question will remain at the Poulsbo center and that Plaintiffs will continue to make

9

scheduled payments until the outcome of the Pennsylvania action.  Dkt. 19, 2-6.

10        Defendant contends that the license agreements governing the Tacoma and Poulsbo

11 centers contain the following provisions, which state in relevant part:

12            This Agreement and all related agreements have been entered into in the
             Commonwealth of Pennsylvania and any matter whatsoever which arises out of or
13           is connected with the Agreement or the franchise shall be governed by and
             construed and enforced in accordance with the laws of the Commonwealth of
14           Pennsylvania.

15            a.  With respect to any legal proceedings arising out of or connected in any way to
             this Agreement or the franchise, OPERATOR and COTTMAN consent to the
16           jurisdiction and venue of any court of general jurisdiction of Montgomery County,
             Pennsylvania or the United States District Court for the Eastern District of
17           Pennsylvania, and any legal proceeding arising out of this Agreement shall be
             brought only in such courts ...

18
              b.  In the event OPERATOR institutes legal proceedings in any court other than
19           those specified, he shall assume all of COTTMAN's costs in connection
             therewith, including but not limited to, reasonable counsel fees.

20
              *Id.* at 3.

21        According to Defendant, two law suits between Cottman and the Mernas have been

22 underway in the Court of Common Pleas, Montgomery County, Pennsylvania since early 2005

23 (Case Nos. 05-00015 & 05-09270).  Both cases involve similar claims for breach of the Poulsbo

24 and Tacoma license agreements, and both have reached the discovery phase.

25

26

A.      PENNSYLVANIA ONE: CASE NO. 05-00015

On January 3, 2005, Cottman Transmission Systems instituted a collection lawsuit ("Pennsylvania One") against Leslie and Bradley Merna, seeking damages on unpaid debts of approximately $51,000.  Dkt. 20-1, at 2.  In that complaint, Cottman alleges (1) multiple breaches of the Tacoma license agreement, (2) multiple breaches of the Poulsbo license agreement, and (3) default on a promissory note.  Dkt. 22-2, at 3-10.  On February 23, 2005, Cottman provided the Mernas with formal notice of termination of the Poulsbo license agreement and took possession of the Poulsbo center.  Dkt. 20-1, at 2.  On February 25, 2005, when the Mernas made no attempt to dispute the monies owed, Cottman procured a default judgment in Pennsylvania One.  *Id.*

A year earlier, on May 13, 2004, Cottman and the Mernas entered into a settlement agreement, which provided that the Mernas would pay a portion of their debt owed to Cottman under the Tacoma center license agreement, and in return would receive the right to operate the Poulsbo center and purchase the equipment located in the Poulsbo center.  *Id.*  On May 25, 2005, after the Mernas allegedly defaulted on the settlement agreement, Cottman filed an amended complaint in Pennsylvania One seeking–in addition to its other claims–to collect all amounts due under the settlement agreement.  *Id.* at 2-3.  In its amended complaint, Cottman now alleges (1) multiple breaches of the Tacoma license agreement, (2) multiple breaches of the Poulsbo license agreement, and (3) breach of the settlement agreement.  Dkt. 20-8, at 3-11.  On June 15, 2005, the Mernas filed their answer to Pennsylvania One, raising several affirmative defenses including breach of the license agreements.  Dkt. 20-9, 10-13.  On September 9, 2005, the parties began discovery in Pennsylvania One.  Dkt. 20-1, at 3.

B.      PENNSYLVANIA TWO: CASE NO. 05-09270

On March 3, 2005, Cottman notified the Mernas that the Tacoma license agreement was subject to immediate termination due to breach, and demanded that the Mernas immediately cease operation of the Tacoma center, which was in competition with Cottman's Poulsbo center.

1   *Id.*  On March 21, 2005, Cottman filed a complaint ("Pennsylvania Two") in Pennsylvania

2   seeking to enjoin the Mernas from, among other things, operating the Tacoma center.  *Id.*  In its

3   complaint, Cottman alleges (1) multiple breaches of both license agreements, (2) violation of the

4   Lanham Act, and (3) unfair competition.  Dkt. 20-12, at 8-20.  On the same date, Cottman filed

5   a petition for a temporary restraining order and preliminary injunction against the Mernas.  *Id.*

6   On June 2, 2005, the Pennsylvania court entered a stipulated preliminary injunction in

7   Pennsylvania Two, which states in part:

8           [i]t is hereby STIPULATED and ORDERED that Defendants [the Mernas] [are]
            enjoined, directly or through acting in concert with others, as follows ... removing
9           or attempting to remove the equipment currently at the Cottman Transmission
            Center located at 650 NW Bovela Lane #2, Poulsbo, WA 98370 ("Poulsbo
10          Center").  Further, Defendants shall continue to make scheduled payments and
            remain current with third party, Frontier Leasing, with respect to their alleged
11          interest in the equipment. ...

12          IT IS FURTHER ORDERED that this Order shall remain in full force and effect
            until further order of this Court.

13   Dkt. 20-15, at 1-2.  On August 9, 2005, the Mernas filed their answer to Pennsylvania Two,

14   raising several affirmative defenses including breach of the license agreements.  Dkt. 20-17, at

15   13-17).  Discovery is now underway in Pennsylvania Two.  Dkt. 20-1, at 3.

16   C.      DEFENDANT'S ARGUMENT

17           In Defendant's Response to Plaintiffs' Motion for Summary Judgment or Injunctive

18   Relief, Defendant contends that Plaintiffs' motion should be denied because the Pennsylvania

19   court has issued a stipulated order prohibiting Plaintiffs from taking possession–or attempting to

20   take possession–of the equipment located at the Poulsbo center.  Defendant also contends that

21   this action should be stayed until the Pennsylvania litigation is complete, because (1) the forum-

22   selection clauses in the Poulsbo and Tacoma license agreements require all disputes arising out

23   of, or related to, the license agreements to be brought in a court of general jurisdiction of

24   Montgomery County, Pennsylvania or the U.S. District Court for the Eastern District of

25   Pennsylvania, and (2) the claims in this action are substantially similar to the claims in the

26   Pennsylvania action.  Dkt. 19, at 7-13.

ORDER
Page - 7

Defendant points out that Plaintiffs failed in their Complaint (Dkt. 1) and Motion for Summary Judgment or Injunctive Relief (Dkt. 10) to inform the Court about the two similar actions filed by Cottman against the Mernas in Pennsylvania. These cases were filed on January 3, 2005 and March 21, 2005, several months before Plaintiffs filed this action on June 3, 2005. Defendant further  points out that Plaintiffs failed to inform the Court about the provisions in the Poulsbo and Tacoma license agreements, under which Plaintiffs agreed to the jurisdiction and venue of the Pennsylvania courts. Defendant also points out that Plaintiffs failed to inform the Court about the previous settlement agreement between the parties, in which Defendant granted Plaintiffs the right to purchase the Poulsbo equipment, and Plaintiffs' alleged breach of the settlement agreement. Defendant also points out that Plaintiffs failed to inform the Court about a stipulated injunction entered by the Pennsylvania court, which enjoins the Mernas from removing or attempting to remove the equipment at the Poulsbo center. Plaintiffs' current motion in this case requests that this Court issue an injunction ordering Defendant to surrender possession of the same Poulsbo equipment. Such an injunction would be in direct conflict with the Pennsylvania injunction, which was issued on June 2, 2005, the day before Plaintiffs filed this action.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

<u>DISCUSSION</u>

A.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR INJUNCTIVE RELIEF

Plaintiffs have requested that the Court issue (1) a declaratory judgment that the license agreements do not grant an option or assignment of the mechanical equipment to Defendant, and (2) an injunction ordering Defendant to return the Poulsbo center equipment to Plaintiffs. Dkt. 10, at 11. Plaintiffs contend in their motion that there is no genuine issue as to any material fact in this matter, and that Plaintiffs are entitled to judgment as a matter of law. The Court does not agree.

First and foremost, the Court is deeply concerned with Plaintiffs' Complaint and Motion for Summary Judgment or Injunctive Relief, which (1) fail to mention the parallel litigation in Pennsylvania, (2) fail to mention that Plaintiffs entered into–and allegedly breached–a settlement

agreement granting Plaintiffs permission to purchase the equipment in question, (3) fail to mention the provisions of the license agreements that appear to grant jurisdiction to the Pennsylvania courts in this matter, and (4) fail to mention that the Pennsylvania court has entered a stipulated injunction enjoining Plaintiffs from removing, or attempting to remove, the equipment in question from the Poulsbo center.  Given these omissions, it appears that Plaintiffs are trying to do an "end run" around the injunction issued by the Pennsylvania court.

Further, in their complaint, Plaintiffs state that "Defendant has wrongfully retained possession of the leased equipment," "Defendant has no right of ownership or possession of the leased equipment," and Defendant's "only claim to the equipment is through its licensing agreement with the Plaintiffs." Dkt. 10, at 4.  These three statements appear false when considering the undisclosed Pennsylvania injunction, which grants possession of the Poulsbo equipment to Defendant.

Fed. R. Civ. P. 11(b)-(c) states, in part, the following:

(b) Representations to Court.  By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions.  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

ORDER
Page - 10

1
2

           (1)(B) On Court's Initiative.  On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

3
4

       An omission may be equally as misleading as a false declarative statement.  *In re Ronco,*

5

*Inc.*, 838 F.2d 212, 218 (7th Cir. 1988).  If a pleading is rendered misleading by virtue of the

6

omission of relevant facts, the presenter may be subject to sanctions.  *Id.*  In *Ronco*, the court

7

noted:

8
9

           While the appellant did not misstate an empirical fact, it did omit facts that were highly relevant to an accurate characterization of the facts that were stated.  Such an obvious omission placed a heavy burden on the court.  The presentation amounts, in its totality, to a half-truth that can be just as misleading, sometimes more misleading, than an absolutely false representation.

10

*Id.*  A pleading determined to be in contravention of Rule 11 "subjects both the signer and the

11

party he represents to an appropriate sanction, which may include an order to pay to the other

12

party or parties the amount of the reasonable expenses incurred because of the filing of the

13

pleading ... including a reasonable attorney's fee."  *Willy v. Coastal Corp.*, 503 U.S. 131 (1992)

14

(internal citations and quotations omitted).  Further, an attorney also has an ethical obligation to

15

disclose material facts to the Court under Rule 3.3 of the Washington Rules of Professional

16

Conduct.

17

       The Court does not take Plaintiffs' omissions lightly, especially when considering the fact

18

that Plaintiffs requested an injunction ordering Defendant to return the Poulsbo equipment to

19

Plaintiffs.  Had the Court issued such an injunction, it would have been in direct conflict with an

20

injunction already issued by the Pennsylvania court, which ordered Plaintiffs not to remove–or

21

attempt to remove–the equipment from the Poulsbo center.  As a side note, the Court is also

22

surprised that Plaintiffs appear to be violating the Pennsylvania court's order by doing exactly

23

what the order prohibits, that is, seeking return of the equipment–and even more surprised that

24

the injunction was a stipulated injunction, agreed to by the parties and issued by the

25

Pennsylvania court the day before Plaintiffs filed this action.  While Plaintiffs' counsel may be

26

able to make a creative argument that their motion before this Court for the equipment's return

ORDER
Page - 11

is within the limitations imposed by the Pennsylvania injunction, Plaintiffs' failure to inform the Court of the injunction's existence raises the question of a fraud against this Court. As such, Plaintiffs' failure to inform the Court about these very important facts may warrant sanctions. Plaintiffs should show cause why sanctions should not be assessed for violating Fed. R. Civ. P. 11(b) by omitting these facts from their Complaint and Motion for Summary Judgment or Injunctive Relief.

Second, the facts surrounding Plaintiffs' request for a declaratory judgment and injunction are hardly clear and unequivocal, and do not support a summary judgment decision in Plaintiffs' favor. Several genuine issues of fact remain, including basic questions of whether Total Lease Concepts or Frontier Leasing perfected a security interest in the Poulsbo equipment by filing a financial statement with the proper state authority, whether the license agreements or Plaintiffs' right to the equipment is preempted or affected by the alleged breach of the settlement agreement, whether Defendant has relied upon Plaintiffs' actions and dealings in regard to the equipment, the effect of the Pennsylvania injunction and litigation on these proceedings, and which equipment, if any, can be reasonably removed from the Poulsbo center and returned to Plaintiffs.

Third, the injunction requested by Plaintiffs directly contradicts and interferes with the injunction already issued by the Pennsylvania court. A federal court may not grant an injunction that interferes with state court proceedings except under three very narrow circumstances–when necessary in aid of its jurisdiction, to protect its judgments, or to effectuate its judgments–none of which are met in this case. *See* 28 U.S.C. §2283 ("Anti-Injunction Act). In *Atlantic Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970), the Supreme Court overturned a federal district court's injunction that was issued in direct conflict with a state court's injunction, noting that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Therefore, for the above reasons,

Plaintiffs' Motion for Summary Judgment or Injunctive Relief should be denied.

B.      DEFENDANT'S MOTION TO STAY PROCEEDINGS UNTIL THE RESOLUTION
        OF THE PENNSYLVANIA ACTIONS

        In its Response, Defendant requests that these proceedings be stayed until the outcome

of the parallel litigation in Pennsylvania.  Defendant argues that the forum-selection clauses in

the Poulsbo and Tacoma license agreements grant jurisdiction to the Court of Common Pleas,

Montgomery County, Pennsylvania, and that the litigation currently underway in the

Pennsylvania court involves substantially similar claims arising from the same transactions.

Plaintiffs argue that the forum-selection clauses are not enforceable, and that a Rider, signed at

the same time as the license agreements, preempts the forum-selection clauses and grants

jurisdiction to the Washington courts.

        Defendant's request for a stay is misplaced, at least with regard to the forum selection

clause.  Simply stated, either this Court is the proper venue for one or more of these claims, or it

is not.  The Court may not stay a case for lack of jurisdiction or improper venue.  If a forum

selection clause is valid and enforceable, the appropriate procedure is to bring a motion to

dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue.  *Murphy v. Schneider Nat'l, Inc.*,

362 F.3d 1133, 1137-38 (9th Cir. 2003); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324

(9th Cir. 1996).  Defendant has not made such a motion.

        Defendant's second request for a stay under the *Colorado River* abstention doctrine may

be a better argument, though a stay under *Colorado River* requires the presence of *exceptional*

*circumstances*, which do not exist in this case.

        In *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 815-16 (1976), the

Supreme Court stated:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.
> The doctrine of abstention, under which a District Court may decline to exercise or
> postpone the exercise of its jurisdiction, is an **extraordinary and narrow**
> **exception** to the duty of a District Court to adjudicate a controversy properly
> before it.  Abdication of the obligation to decide cases can be justified under this
> doctrine only in the exceptional circumstances where the order of the parties to
> repair to State court would clearly serve an important countervailing interest. ...

1

2

3

> Abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination or pertinent state law. ... Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. (Internal quotations and citations omitted.) (Emphasis added.)

4

5

6

In *Holder v. Holder*, 305 F.3d 854, 867-68 (2002), the United States Court of Appeals for the Ninth Circuit discussed the *Colorado River* abstention doctrine, and set forth several factors for consideration when a stay is contemplated:

7

8

9

10

11

12

13

14

> Under *Colorado River*, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter. Exact parallelism is not required; it is enough if the two proceedings are substantially similar. But because generally, as between state and federal courts with concurrent jurisdiction, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, the *Colorado River* doctrine is a narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), the Supreme Court clarified that to fit into this narrow doctrine, exceptional circumstances must be present. ...

15

16

17

18

19

20

> Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay. When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this*, it would be a serious abuse of discretion to grant the stay or dismissal at all. ... Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses. (Internal quotations and citations omitted.)

21

22

23

24

25

26

The Court in *Holder* makes it clear that a stay under the Colorado River abstention doctrine is only appropriate when the parallel state-court litigation will resolve all of the issues between the parties. As noted in *Holder* above, "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case ..." *Id.* at 868.

ORDER
Page - 14

1  Plaintiffs' claims before this Court include violations of the Washington Franchise

2  Investment Protection Act, RCW 19.100.030 *et seq.*, and violations of the Washington

3  Consumer Protection Act, RCW 19.86 *et seq.*  Neither of these claims are being litigated in the

4  Pennsylvania court, and upon conclusion of the Pennsylvania litigation, these claims may still

5  require attention from this Court.  Therefore, the circumstances in this case do not warrant a

6  stay under the *Colorado River* abstention doctrine at this time.

7      As a separate matter, the Court is concerned with Plaintiffs' actions in this case.  For

8  example, Plaintiffs have chosen to bring their claims here in Washington, while proceeding with

9  the two similar cases filed against them in Pennsylvania, without apparent regard for potential

10 issues of res judicata, collateral estoppel, or compulsory counterclaims.  Perhaps more troubling,

11 however, is the following language in the forum-selection clauses in the license agreements: "In

12 the event OPERATOR institutes legal proceedings in any court other than those specified, he

13 shall assume all of COTTMAN's costs in connection therewith, including but not limited to,

14 reasonable counsel fees."  Dkt. 19, at 3.  Given this provision, Plaintiffs' decision to file claims

15 in Washington that include breach of the Tacoma and Poulsbo license agreements, while

16 defending similar claims for breach of the same agreements in Pennsylvania, is particularly

17 puzzling.  Plaintiffs' counsel is therefore invited to think carefully about his strategy in this

18 matter, especially with regard to his clients' welfare.

19

20                                    ORDER

21     Therefore, it is hereby

22     **ORDERED** that Plaintiffs' Motion for Summary Judgment or Injunctive Relief (Dkt.

23 10) is **DENIED**, and that Defendant's Cross Motion for Stay of Proceedings (Dkt. 19) is

24 **DENIED**.

25

26

1
2
3
4
5
6
7
8
9
10
11

  Plaintiffs are further **ORDERED** to **SHOW CAUSE** in writing, if any they have, no later than December 29, 2005, why sanctions should not be assessed against Plaintiffs for violating Fed. R. Civ. P. 11(b) by omitting material facts from their Complaint and Motion for Summary Judgment or Injunctive Relief.  Specifically, Plaintiffs' pleadings fail to mention (1) the parallel litigation in Pennsylvania, (2) the fact that Plaintiffs entered into–and allegedly breached–a settlement agreement granting Plaintiffs permission to purchase the equipment in question, (3) the provisions of the license agreements that appear to grant jurisdiction to the Pennsylvania courts in this matter, and (4) the Pennsylvania court's stipulated injunction enjoining Plaintiffs from removing, or attempting to remove, the equipment in question from the Poulsbo center.

12
13

  The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

14

  DATED this 16th day of December 16, 2005.

15
16
17

*Robert J Bryan*

Robert J. Bryan
United States District Judge

18
19
20
21
22
23
24
25
26